# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SHANNON GATLIFF,

                 Petitioner,           :    Case No. 1:14-cv-931

    - vs -                                   District Judge Timothy S. Black
                                              Magistrate Judge Michael R. Merz

TERRY TIBBALS, Warden,
 London Correctional Institution,

                                             :
                Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Shannon Gatliff to obtain relief from his conviction for felonious assault in the Clermont County Common Pleas Court.  On Magistrate Judge Bowman's Order (ECF No. 2), the Warden has filed the State Court Record and a Return of Writ (ECF Nos. 6 & 7).  The case became ripe for decision when Gatliff filed his Reply on July 6, 2015 (ECF No. 9).

The case was recently transferred to the undersigned as part of workload balancing among Western Division Magistrate Judges (ECF No. 10).

## Procedural History

Mr. Gatliff was indicted by a Clermont County grand jury on January 12, 2012, on one count of felonious assault on Christina Freeman on December 24, 2011.  The case was tried to a

jury which found Gatliff guilty and he was sentenced to seven years imprisonment as a result. Gatliff timely appealed to the Twelfth District Court of Appeals which affirmed the conviction and sentence. *State v. Gatliff,* 2013-Ohio-2862, 2013 Ohio App. LEXIS 2909 (12th Dist. July 1, 2013).[1] The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *State v. Gatliff,* 137 Ohio St. 3d 1422 (2013). Although Gatliff filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 raising a claim of ineffective assistance of trial counsel, his appeal from denial of that petition was dismissed for lack of an appellate brief and, in any event, the claim raised there is not pursued here.

# ANALYSIS

## Ground One: Insufficient Evidence

In his First Ground for Relief, Gatliff asserts he stands convicted on constitutionally insufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364.

---

[1] References hereinafter to "*State v. Gatliff, supra,*" are to this opinion.

2

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and

then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v.*

*Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir.

2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may

sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v.*

*Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (per curiam). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

The evidence at trial in this case was summarized by the Twelfth District as follows:

> **[*P3]** The first witness to testify was Christina who explained that
> during the evening of December 24, 2011, she was at her
> restaurant, the Backyard Inn Bar & Grill. Christina had closed the
> restaurant early and invited a few of her family members and
> friends to come by after the business shut down for the night.
> Around 10:00 p.m., appellant, his sister (Amanda), and his brother-
> in-law came into the bar through a back entrance. Christina stated
> that she had been in a relationship with appellant for the past
> several months and the couple had broken up about ten days
> earlier. Christina told appellant to leave and followed him to the
> back door to ensure that he left the property.

 **[*P4]**  Christina testified that once outside the bar, Amanda became verbally abusive towards her. The two women then got involved in a physical altercation. Christina stated that the pair fell to the ground and "wrestled around." She explained that during the scuffle, Amanda's hands were tangled in Christina's hair and Amanda was unable to hit her. After Amanda released Christina's hair, appellant jumped on top of Christina, and repeatedly struck her in the face with his fist. Christina stated that he hit her in the mouth, her right eye, and on the right side of her face. Eventually, appellant stopped hitting her and she was able to get up. As Christina was walking back to the bar, Amanda pulled her hair and she fell to the ground on her right elbow. As a result of the fight, Christina suffered a fractured orbital floor of the right eye, loosened teeth, and lip, cheek, and elbow injuries. Christina testified that she had reconstructive surgery on her right eye and experiences double vision.

 **[*P5]**  During Christina's testimony, the restaurant's surveillance video was shown. Christina explained that she has a surveillance video system throughout her restaurant and after the fight, police obtained the video recording of the restaurant that captured the fight. The police did not obtain the video of the interior of the restaurant. The video was in black and white, had no audio, and showed only what occurred outside of the restaurant. The video captured the initial argument between Christina and Amanda as well as the ensuing physical altercation between Christina and Amanda.

 **[*P6]**  The next witness to testify was Christina's mother who explained that she was at the restaurant on December 24, 2011. She stated that initially, a fight broke out between Amanda and Christina. During the fight, the women fell to the ground and both girls had their hands in the other's hair. Appellant then came over and struck Christina in the mouth. Christina's mother testified that one of appellant's hands was on Christina's throat while the other hand was hitting her face. Ultimately, Christina's  mother called 911 and the 911 recording was introduced at trial where Christina's mother stated that appellant had beat up her daughter.

 **[*P7]**  The state also had other witnesses who testified that they observed the fight between Christina and appellant and some of them admitted consuming alcohol prior to the altercation. All the witnesses stated that appellant struck Christina and caused all her injuries except the elbow injury. The witnesses agreed that the fight between Christina and Amanda did not cause any of

Christina's injuries because the women only had their hands in each other's hair.

[*P8] Finally, the state presented the testimony of a jail inmate who was located in the same section of the jail as appellant and also had criminal charges pending. The inmate stated that appellant revealed that he knew where the cameras were located at Christina's restaurant and admitted to assaulting her. Specifically, appellant stated that he "pound[ed]" Christina's face "a couple times into the ground."

[*P9] Defense counsel presented the testimony of Amanda and appellant's brother-in-law, who denied that appellant caused the injuries to Christina. Appellant's brother-in-law stated that Christina started the fight when she pushed appellant. He explained that Christina "bull rushed" Amanda into the truck and they both struck the vehicle very hard. Amanda agreed that they hit a truck before the pair fell to the ground and that she was kicking towards Christina during the fight to free herself. She stated that during the struggle she kicked and punched Christina in the face. Both Amanda and appellant's brother-in-law testified that appellant was trying to protect Christina when he fell into the pile. Additionally, they agreed that appellant never punched Christina.

[*P10] Lastly, appellant testified in his own defense and denied causing any of the injuries to Christina. Appellant stated that he and Christina were in a relationship, had lived together, and had broken up shortly before the alleged assault. Appellant received a text message from Christina requesting that he retrieve his clothes from her home. In response to this text, he went to Christina's restaurant on December 24 to make arrangements to get his belongings. Upon arriving at the bar, appellant stated that Christina was intoxicated. According to appellant, a verbal altercation ensued as he was leaving the bar between Christina and Amanda, and at some point Christina kicked appellant. Christina and Amanda started fighting and Amanda kicked Christina in the mouth. He stated that he tried to break up the fight between Christina and Amanda but tripped and fell down to the ground. Appellant then got entangled in the fight between Christina and Amanda but denied that he ever choked or hurt Christina.

*State v. Gatliff, supra.*

The Twelfth District then considered Gatliff's first three assignments of error together and held:

6

[**P13**]  Assignment of Error No. 1:

[**P14**]  THE JURY ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF FELONIOUS ASSAULT, AS THOSE FINDINGS WERE NOT SUPPORTED BY  SUFFICIENT EVIDENCE.

[**P15**]  Assignment of Error No. 2:

[**P16**]  THE JURY ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FINDING HIM GUILTY OF FELONIOUS ASSAULT, AS THOSE FINDINGS WERE CONTRARY TO LAW.

[**P17**]  Assignment of Error No. 3:

[**P18**]  THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY OVERRULING HIS MOTION FOR ACQUITTAL UNDER OHIO CRIMINAL PROCEDURE RULE 29.

[**P19**]  Appellant argues that there was insufficient evidence to support his conviction, his conviction is against the manifest weight of the evidence, and the trial court erred in overruling his Crim.R. 29 motions for acquittal. Specifically, appellant argues his conviction is in error because the witnesses' testimony was contradictory as to his involvement in the fight and the evidence established that his sister was the primary person engaged in the fight.

[**P20**]  Crim.R. 29(A) provides, "[t]he court on motion of the defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A Crim.R. 29(A) motion tests the sufficiency of the evidence. *State v. Stutz,* 12th Dist. No. CA2010-06-013, 2011 Ohio 3517, ¶ 11.  An appellate court reviews the denial of a Crim.R. 29 motion under the same standard used for reviewing a sufficiency of the evidence claim. *State v. Clements,* 12th Dist. No. CA2009-11-277, 2010 Ohio 4801, ¶ 17. *See also State v. Carter,* 72 Ohio St.3d 545, 553, 1995 Ohio 104, 651 N.E.2d 965 (1995).

[**P21**]  Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence

underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul,* 12th Dist. No. CA2011-10-026, 2012 Ohio 3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

[*P22] On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett,* 12th Dist. No. CA2011-09-177, 2012 Ohio 2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham,* 12th Dist. No. CA2008-07-095, 2009 Ohio 2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg,* 197 Ohio App.3d 201, 2012 Ohio 1289, ¶ 114, 966 N.E.2d 958 (12th Dist.)

[*P23] "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart,* 12th Dist. No. CA2011-03-008, 2012 Ohio 1896, ¶ 43. Accordingly, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

[*P24] Appellant was charged and convicted of felonious assault in violation of R.C. 2903.11(A)(1), a felony in the second degree. Pursuant to R.C. 2903.11(A)(1), "[n]o person shall knowingly * * * [c]ause serious physical harm to another or to another's unborn." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature * * *." R.C. 2901.22(B). Serious physical harm includes,

8

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree or prolonged or intractable pain.

R.C. 2901.01(A)(5).

 **[*P25]**  We find that the greater inclination of the evidence supports appellant's felonious assault conviction. The state produced ample evidence that appellant knowingly caused physical harm to Christina. Christina and five other eyewitnesses testified that appellant punched Christina in the face. Specifically, Christina stated that appellant punched her multiple times in the mouth, the eye, and on the side of her face. Christina and the eyewitnesses all consistently denied that Amanda caused Christina's injuries explaining that Amanda only had her hands in Christina's hair. The state also produced the testimony of a man who was in jail with appellant. The man stated that appellant "bragged" to him that he had "got on top of Christina and pounded her face a couple times into the ground."

 **[*P26]**  The evidence also established that the injuries Christina suffered qualified as "serious physical harm." Christina testified that as a result of the assault she suffered a fractured orbital floor of the right eye, her teeth were loose, her lip was spilt open, and her cheek was bruised and severely swollen. The state introduced medical records and photographs taken of Christina after the assault that corroborated her testimony regarding her injuries. The photographs showed severe bruising of Christina's right eye and numerous other bruises on Christina's body. Christina also explained that she had to undergo reconstructive surgery in order to repair the orbital fracture and noted that she suffers from double vision in that eye. An emergency room physician who treated Christina also testified that Christina's orbital fracture was a

"significant injury." He stated that the concerns with this kind of injury are brain damage, the loss of the ability to move the eye, and double vision.

[*P27]  Appellant contends that his conviction was in error because there was contradictory testimony regarding his and Amanda's involvement in the fight. Appellant argues the jury lost its way because it did not consider the defense witnesses' testimony who explained that Christina's injuries were caused by her fall and her fight with Amanda. However, simply because the testimony at trial was contradictory does not make a conviction against the manifest weight of the evidence. It was for the jury to determine whether all, part, or none of the defense witnesses' testimony was credible as it was in the best position to observe the witnesses' demeanor. *State v. Mays,* 12th Dist. CA2012-05-038, 2013-Ohio-1952, ¶ 27. The jury's decision to find the state's witnesses credible does not render the verdict against the manifest weight of the evidence. *State v. Birt,* 12th Dist. No. CA2012-02-031, 2013 Ohio 1379, ¶ 47.

[*P28]  Given the evidence presented, the jury clearly did not lose its way and create such a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. As appellant's felonious assault conviction was not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt and to overcome appellant's Crim.R. 29(A) motion. Accordingly, appellant's first, second, and third assignments of error are overruled.

*State v. Gatliff, supra.*

In challenging the conclusion of the Twelfth District that there was sufficient evidence to convict, Gatliff emphasizes that there was a great deal of contradiction in the testimony and that it appeared his sister Amanda was the "primary person engaged in a violent physical altercation with the alleged victim."  (Traverse, ECF No. 9, PageID 1378.)

However, the presence of contradictory testimony does not preclude a finding that the evidence was sufficient to convict.  The whole point of a trial is to present the testimony, often of conflicting witnesses, and let the jury decide which witnesses are more credible.  Six witnesses,

including the victim, testified Gatliff punched the victim in the face. *State v. Gatliff, supra*, at ¶ 25. It was those witnesses the jury believed, despite the countervailing evidence, and that is sufficient for conviction.

**Ground Two:  Conviction "Contrary to Law"**

Despite the way this claim is labeled -- "contrary to law" -- Gatliff argues it as a claim that the conviction is against the manifest weight of the evidence (Traverse, ECF No. 9, PageID 1378).  A claim that a conviction is against the manifest weight of the evidence does not state a claim cognizable in habeas corpus, i.e., a claim of violation of the United States Constitution.  A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1976).

**Ground Three:  Denial of Motion for Judgment of Acquittal**

Gatliff requests the Court consider his first three grounds for relief separately, although the Twelfth District decided them together.  The Court has respected that request with the Second Ground for Relief.  However, as a matter of law, a Rule 29 motion for judgment of acquittal raises a claim that the evidence is insufficient, the same claim made in the First Ground for Relief.  The analysis is the same and shows that sufficient evidence was presented.

**Ground Four:  Sentence Contrary to Law**


In his Fourth Ground for Relief, Petitioner asserts his sentence is contrary to law and its imposition was an abuse of discretion by the trial judge.

In arguing this claim in his Traverse, he asserts that he was only a minor participant in the fight, there was no video surveillance camera proof of his participation at all, and the court did not properly follow Ohio felony sentencing statutes  (Traverse, ECF No. 9, PageID 1380-81). Toward the end of his argument, he admits that the sentence imposed was "within the sentencing range and not contrary to law, [it] was an abuse of the trial court's discretion, as it [is] erroneous and excessive."  *Id.*  at PageID 1381, citing *State v. Kalish*, 120 Ohio St. 3d 23 (2008).

Petitioner presented this claim as his Fourth Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> **[\*P30]**  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY IMPOSING A SENTENCE THAT IS AN ABUSE OF DISCRETION.
>
> **[\*P31]**  Appellant argues the trial court abused its discretion when it sentenced him to seven years of imprisonment. He maintains his sentence was excessive because he did not start the altercation and after it started, he was merely a minimal participant in the fight.
>
> **[\*P32]**  Appellate courts apply a two-step procedure when reviewing felony sentences. First, courts must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. *State v. Kalish,* 120 Ohio St.3d 23, 2008 Ohio 4912, ¶ 26, 896 N.E.2d 124. If this first prong is satisfied, then the sentencing court's decision is reviewed for an abuse of discretion. *Id.* An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Jackson,* 107 Ohio St.3d 53, 2005 Ohio 5981, ¶ 181, 836 N.E.2d 1173.
>
> **[\*P33]**  In applying the first prong under *Kalish,* a sentence is not

clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range. *Kalish* at ¶ 18; *State v. Rose,* 12th Dist. No. CA2011-11-241, 2012 Ohio 5607, ¶ 78. The trial court has discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure and is not required to engage in any factual findings under R.C. 2929.11 or R.C. 2929.12. *Rose* at ¶ 78.

 **[\*P34]**  Upon review of the record, we find that appellant's sentence is not contrary to law. The trial court stated it considered the purposes and principles of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors listed in R.C. 2929.12. The trial court also sentenced appellant within the applicable statutory range. Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1), a felony in the second degree. R.C. 2903.11(D)(1)(a). According to R.C. 2929.14(A)(2), the sentence for a felony of the second degree shall be between two and eight years. Therefore, appellant's sentence of seven years was within the applicable range. Lastly, the trial court properly applied postrelease control.

 **[\*P35]**  We further find that the trial court did not abuse its discretion in sentencing appellant to seven years in prison. The trial court considered the presentence investigation report as well as appellant's lack of remorse. The court noted that while appellant does not have a long criminal record, the crimes he has committed are serious offenses. The court also noted that appellant received multiple misconduct reports while in prison. Therefore, the court found that due to these factors, appellant's chances of recidivism are more likely. Thus, in light of the facts of this case, the court did not abuse its discretion in imposing a seven year prison term.

 **[\*P36]**  Appellant's fourth assignment of error is overruled.

*State v. Gatliff, supra*.

The question of whether the sentencing judge followed the Ohio felony statutes is a question of state law on which this Court is bound by the state court decision. *Volpe v. Trim*, 708 F.3d  688 (6th Cir. 2013).  "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe*, 708 F.3d at 697, *citing*

*Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989); *Railey v. Webb*, 540 F.3d 393, 398 (6th Cir. 2008), *citing Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") To put it another way, this Court cannot review whether the sentencing judge complied with Ohio law; it must accept the determination of the Twelfth District that he did so. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Nor can this Court review an Ohio trial judge's sentencing action for abuse of discretion. Abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Therefore the Fourth Ground for Relief should be dismissed.

**Ground Five: Failure to Preserve Evidence**

In his Fifth Ground for Relief, Gatliff claims his constitutional rights were violated when the State failed to preserve the surveillance video of the interior of the restaurant from December 24, 2011. He claims the police failed to collect these video recordings, despite his attorney's demand for discovery on February 16, 2012, and that the tapes were destroyed in bad faith (Traverse, ECF No. 9, PageID 1382).

This claim was presented to the Twelfth District as Gatliff's Fifth Assignment of Error and decided by that Court as follows:

> **[*P37]** Assignment of Error No. 5:

> **[*P38]** THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT GRANTING HIS REQUEST FOR EVIDENCE.

14

[*P39]  Appellant argues his due process rights were violated when the state failed to preserve the surveillance video of the interior of the bar. Appellant alleges this recording contained exculpatory evidence regarding the actions of appellant and the witnesses prior to the altercation. Appellant also maintains that this evidence was at least potentially useful and it was destroyed in bad faith.

[*P40]  Depending on the nature of the evidence, different tests are applied to determine whether the state's failure to preserve evidence amounts to the level of a due process violation. *State v. Powell,* 132 Ohio St.3d 233, 2012 Ohio 2577, ¶ 73-77, 971 N.E.2d 865. The state's failure to preserve "materially exculpatory" evidence, regardless of whether such failure was done in good faith or bad faith, violates due process. *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L. Ed. 2d 413 (1984). Evidence is constitutionally material when it possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Powell* at ¶ 74, quoting *Trombetta* at 489. The defendant bears the burden to show that the evidence was materially exculpatory. *Powell* at ¶ 74. *See State v. Powers,* 12th Dist. No. CA2004-12-110, 2005 Ohio 4340, ¶ 15 (noting that burden shifts to state when defendant requests preservation of evidence prior to evidence's destruction).

[*P41]  However, a different rule is used when the evidence is merely "potentially useful." *State v. Geeslin,* 116 Ohio St.3d 252, 2007 Ohio 5239 at ¶ 9-10, 878 N.E.2d 1. "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L. Ed. 2d 281 (1988). Bad faith implies more than bad judgment or negligence, rather "[i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Powell* at ¶ 81.

[*P42]  We find that appellant's due process rights were not violated when the state failed to preserve the surveillance video of the interior of the bar. We begin by noting that appellant has the burden to prove the evidence is materially exculpatory as his discovery demand occurred after the video was erased pursuant to the surveillance system's normal procedures. Appellant has failed to establish the video would be materially exculpatory. It is

undisputed that the altercation occurred completely outside. Therefore, the interior video would not provide any evidence regarding what took place during the fight. Additionally, the video would not provide materially exculpatory information regarding the parties' actions prior to the fight. Appellant's time inside the restaurant was brief and all the witnesses testified regarding what occurred inside the restaurant. Additionally, the surveillance video would not provide any information as to the conversations before the fight as the video did not record any audio.

[*P43] Because the video did not provide any materially exculpatory evidence, our inquiry turns to whether it would be potentially useful and whether the video was destroyed in bad faith. Even assuming that a video of the interior of the bar prior to the fight would be potentially useful, appellant has failed to point to any evidence to show how it was destroyed in bad faith. Instead, the evidence showed that the surveillance video was taped over in the normal course of business. The state preserved the video that contained images of the fight. Appellant's assertions that the video was destroyed in bad faith are solely speculative. Thus, we find the trial court did not err by denying his request to preserve the evidence.

[*P44] Appellant's fifth assignment of error is overruled.

*State v. Gatliff, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter,* 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

This Fifth Ground for Relief was presented to the Twelfth District Court of Appeals as a constitutional claim and decided by that court on the merits. Its decision was not contrary to Supreme Court precedent as it relied on relevant precedent from that Court in making its decision, particularly *California v. Trombetta,* 467 U.S. 479 (1984). Nor is the decision an

objectively unreasonable application of *Trombetta*.  Relevant facts as found by the Ohio courts are that the fight took place entirely outside the restaurant, the system did not record any audio, and the recording was taped over by the ordinary operation of the surveillance camera system before any demand for discovery was made.  Upon those facts, no due process violation occurred and the Fifth Ground for Relief should therefore be dismissed.

**Ground Six:  Failure to Instruct on Lesser Included Offense**

In his Sixth Ground for Relief, Gatliff claims he was denied due process of law when the trial court refused to instruct the jury on a lesser included offense.  In particular, he claims the jury should have been given the option of convicting him of felonious assault with the mens rea of recklessness, as opposed to knowingly  (Traverse, ECF No. 9, PageID 1382).

Gatliff raised this as his Sixth Assignment of Error on direct appeal and the Twelfth District decided it as follows:

> [*P45]  Assignment of Error No. 6:
>
> [*P46]  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT INCLUDING A LESSER INCLUDED JURY INSTRUCTION.
>
> [*P47]  Appellant challenges the trial court's jury instructions. At trial, the court refused to instruct the jury on assault with the mens rea of recklessness. Instead, the court instructed the jury regarding felonious assault and assault with the mens rea of knowingly. Appellant asserts the court's refusal to instruct the jury regarding reckless assault was in error because the jury could have found that he did not knowingly cause the injuries to Christina but instead injured her inadvertently.
>
> [*P48]  The jury was instructed on and appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1). Pursuant to R.C. 2903.11(A)(1), "[n]o person shall *knowingly* * * * cause

serious physical harm to another or to another's unborn." (Emphasis added.) However, the court refused to instruct the jury regarding reckless assault in violation of R.C. 2903.13(B), which provides, "[n]o person shall *recklessly* cause serious physical harm to another or to another's unborn." (Emphasis added.) The distinction between felonious assault and reckless assault is the mental state. A person acts knowingly, when, regardless of his purpose, "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature * * *." R.C. 2901.22(B). However, recklessly is defined as a person acting "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result * * *." *Id.* at (C).

 [**P49**] Jury instructions are matters left to the sound discretion of the trial court. *State v. Guster,* 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). Therefore, this court reviews the trial court's decision refusing to provide the jury with a requested jury instruction for an abuse of discretion. *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock,* 108 Ohio St.3d 57, 2006 Ohio 160, ¶ 130, 840 N.E.2d 1032.

 [**P50**] A jury instruction on a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. *State v. Carroll,* 12th Dist. Nos. CA2007-02-030, CA2007-03-041, 2007 Ohio 7075, ¶ 136, citing *State v. Carter,* 89 Ohio St.3d 593, 600, 2000 Ohio 172, 734 N.E.2d 345 (2000). However, an instruction is not warranted simply because the defendant offers "some evidence" to establish the lesser-included offense. *State v. Shane,* 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992). Instead, there must be "sufficient evidence" to "allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included offense." (Emphasis sic.) *State v. Anderson,* 12th Dist. No. CA2005-06-156, 2006 Ohio 2714, ¶ 11, quoting *Shane* at 632-633. In making this determination, the trial court must consider the evidence in a light most favorable to the defendant. *State v. Smith,* 89 Ohio St.3d 323, 331, 2000 Ohio 166, 731 N.E.2d 645 (2000).

 [**P51**] Reckless assault, in violation of R.C. 2903.13(B), is a lesser included offense of felonious assault in violation of R.C. 2903.11(A)(1). *State v. Vera,* 8th Dist. No. 79367, 2002 Ohio 974, 2002 WL 363648, *6 (Mar. 7, 2002); *State v. Turks,* 3d Dist. Nos.

1-10-02, 1-10-26, 2010 Ohio 5944, ¶ 26; *State v. Krug,* 11th Dist. No. 2008-L-085, 2009 Ohio 3815, ¶ 95. Therefore, our inquiry turns on whether there was sufficient evidence presented at trial that reasonably supports an acquittal on felonious assault and a conviction on reckless assault.

[*P52] The evidence at trial did not reasonably support both an acquittal on felonious assault and a conviction on reckless assault. At trial, appellant's defense was that he did not hit Christina or cause any of her injuries. Appellant testified that the injuries were a result of the fight between Christina and appellant's sister. Appellant explained that he attempted to break up the fight but he did not hurt Christina in any way. Appellant's sister also testified that she and Christina got into a fight and appellant was attempting to protect her. On the other hand, the witnesses for the state all testified that appellant deliberately caused Christina's injuries. Therefore, there was no evidence at trial to support the inference that appellant merely "recklessly" caused Christina's injuries. Instead, the evidence only supported either the conclusion that appellant "knowingly" caused Christina's injuries or that he did not injure her at all. Thus, the trial court did not err in refusing to instruct the jury regarding reckless assault, committed in violation of R.C. 2903.13(B).

[*P53] Appellant's sixth assignment of error is overruled.

*State v. Gatliff, supra.*

The Twelfth District held that reckless assault is a lesser included offense of felonious assault, but also explained why a reckless assault instruction was not warranted in this case. In recognition of the same distinction, the trial judge did instruct on "simple" assault. However, because all of the testimony was to the effect that Gatliff acted intentionally in assaulting Freeman, a recklessness option was not warranted by the evidence.

However, whether or not the Twelfth District got the Ohio law right on this assignment of error is immaterial on this Ground for Relief because there is no constitutional requirement to give a lesser included offense instruction in a non-capital case. *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990). Gatliff cites no

19

Supreme Court law to the contrary.  Therefore the Sixth Ground for Relief should be dismissed.


**Ground Seven:  Exclusion of Evidence**


In his Seventh Ground for Relief, Gatliff claims exclusion of evidence about Christina Freeman's alleged involvement in an arson and still photographs taken from the surveillance video denied him due process and a fair trial.   Gatliff presented this claim as his Seventh Assignment of Error on direct appeal and the Twelfth District decided it as follows:

[*P54]  Assignment of Error No. 7:

[*P55]  THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY NOT ALLOWING EVIDENCE TO BE ADMITTED.

[*P56]  Appellant argues the trial court erred when it did not allow testimony regarding Christina's alleged involvement in an arson. Appellant maintains that this testimony provides a possible motive to prove that Christina falsely accused appellant of assaulting her. Appellant also maintains that the court erred when it refused to admit still photographs taken from the surveillance video of Christina's restaurant.

[*P57]  The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Lee,* 191 Ohio App.3d 219, 2010 Ohio 6276 (12th Dist.), ¶ 23, 945 N.E.2d 595, citing *State v. Sage,* 31 Ohio St.3d 173, 31 Ohio B. 375, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. *Lee* at ¶ 23. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *State v. Jackson,* 107 Ohio St.3d 53, 2005 Ohio 5981, ¶ 181, 836 N.E.2d 1173.

[*P58]  It is well-established that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. Evid.R. 404(B); *State v. Ford,* 12th Dist. No.

CA2009-01-039, 2009 Ohio 6046 ¶ 37. Such evidence may be used for other purposes, however, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); *Ford* at ¶ 37. Nevertheless, even if the evidence meets the prerequisites of Evid.R. 404(B), it may still be excluded under Evid.R. 403(A) if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. *State v. Hart,* 12th Dist. No. CA2008-06-079, 2009 Ohio 997, ¶ 11. Further, a court also has the discretion to exclude otherwise admissible evidence, if the probative value is substantially outweighed by "needless presentation of cumulative evidence." Evid.R. 403(B).

[*P59] "Evid.R. 403(A) speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits." *State v. Martin,* 12th Dist. No. CA2007-01-022, 2007 Ohio 7073, ¶ 16, citing *State v. Skatzes,* 104 Ohio St.3d 195, 2004 Ohio 6391, ¶ 107, 819 N.E.2d 215. Unfairly prejudicial evidence is that which might result in an improper basis for a jury decision. *State v. Bowman,* 144 Ohio App.3d 179, 186, 759 N.E.2d 856 (12th Dist.2001).

[*P60] We begin by discussing whether the trial court erred in prohibiting evidence of a possible arson investigation against Christina. At trial, defense counsel elicited the following evidence. Appellant testified that earlier in the year the cabin of his best friend, Tim, burned down in a fire. Appellant explained that on the day the fire occurred, Christina told appellant that her best friend had burned down the cabin. Christina also reportedly told appellant that she jokingly told her best friend to burn down the cabin. Appellant testified that later that night, Christina's best friend came over and confessed that she was involved in the arson. Two months later, appellant informed Tim what he heard about who was involved in the arson. Shortly thereafter, appellant met with the State Fire Marshall to discuss the arson. Appellant stated that once Christina found out he was meeting with the Fire Marshall, she broke up with him and kicked him out of the house. This occurred ten days before Christina's alleged assault.

[*P61] We find that the trial court did not abuse its discretion by refusing to admit evidence regarding Christina's alleged involvement in the arson. Assuming, *arguendo,* that such evidence of Christina's past wrong was admissible to prove a motive to falsely accuse appellant of felonious assault; we find that any

probative value was substantially outweighed by the dangers listed in Evid.R. 403(A), and the evidence was therefore inadmissible. The probative value of this evidence was low as appellant's evidence regarding Christina's involvement in the arson is merely speculative. There was no evidence that Christina has been charged or convicted for her involvement in the alleged arson. *See State v. Buchanan*, 12th Dist. No. CA2008-04-001, 2009 Ohio 6042, ¶ 57. Further, no party who was allegedly involved in the arson had anything to do with the present charge against appellant. The evidence's probative value is also weakened in light of the diminished role that Christina's credibility played at trial. At trial, the state not only presented Christina's testimony but also presented five other eyewitnesses, a surveillance video, testimony of a jail inmate, and several photographs of Christina's injuries.

[**\*P62**] On the other hand, the prejudicial effect of this testimony is great as this evidence could confuse the jury as to the issues involved in the present case. Additionally, the jury could use this evidence as improper character evidence, inferring that Christina is a bad person and must be punished rather than conducting an objective evaluation of the operative facts. Accordingly, we find the trial court did not abuse its discretion in refusing to admit evidence regarding Christina's involvement in the arson.

[**\*P63**] We also find that the court did not abuse its discretion in refusing to admit the still photographs taken from the surveillance video. At trial, defense counsel sought to introduce several still photographs of the incident. These photographs were taken from the surveillance video that was admitted into evidence. In refusing to admit these photographs, the court reasoned that the photographs would not be helpful to the jury as the photos were taken directly from the surveillance video. The jury had access to the surveillance video during its deliberations and was able to stop the video and observe a single scene of the video. Additionally, the court reasoned that the still photographs might have distorted the images as compared to the video.

[**\*P64**] We agree with the trial court that the probative value of the still photos is slight as the jury already had access to the surveillance footage. The still photos were cumulative to the evidence already admitted at trial. Accordingly, we find that the court did not abuse its discretion in refusing to admit the still photos.

[**\*P65**] Appellant's seventh assignment of error is overruled.

*State v. Gatliff, supra.*

Although Gatliff couches this claim as a due process and fair trial claim, it is clear from his Brief on appeal that he argued it to the Twelfth District purely as a matter of Ohio evidence law (Brief, State Court Record, ECF No. 6-1, PageID 155).  As is pointed out above, a federal habeas court has no authority to review a state court's decision on a question of state law.

Moreover, because Gatliff presented the claim to the state courts as a state law question rather than making a federal constitutional claim there, he has procedurally defaulted this Ground for Relief.  To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Gatliff's Seventh Ground for Relief should be dismissed.


**Ground Eight:  Juror Misconduct**


In his Eighth Ground for Relief, Gatliff claims he was denied due process by juror

misconduct.  Gatliff presented this claim to the Twelfth District as his Eighth Assignment of Error which that court decided as follows:

[*P66]  Assignment of Error No. 8:

[*P67]  DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS BY THE MISCONDUCT OF THE JURY AND HIS MOTION FOR A NEW TRIAL AND/OR EVIDENTIARY HEARING SHOULD HAVE BEEN GRANTED.

[*P68]  Appellant argues the court erred by denying his motion for a new trial based on juror misconduct, or at least, erred by denying his motion without holding an evidentiary hearing. Specifically, appellant maintains that a member of the jury conducted an improper independent inquiry when that juror was aware of and most likely viewed a video of the altercation on the internet.

[*P69]  A new trial may be granted on motion of a criminal defendant due to juror misconduct that materially affects the defendant's substantial rights. Crim. R. 33(A)(2). A motion for a new trial based on juror misconduct must be supported by an affidavit showing the truth of the allegation. Crim. R. 33(C). The decisions whether to grant a motion for a new trial or hold an evidentiary hearing on the motion are committed to the trial court's sound discretion, and the trial court's decision will not be reversed absent an abuse of discretion, i.e., the decision is arbitrary, unconscionable or unreasonable. *State v. Brakeall,* 12th Dist. No. CA2008-06-022, 2009 Ohio 3542, ¶ 9, citing *State v. Hessler,* 90 Ohio St.3d 108, 122-124, 2000 Ohio 30, 734 N.E.2d 1237 (2000).

[*P70]  When considering the evidence regarding a motion for a new trial due to juror misconduct, the court is constrained by Evid.R. 606(B). Evid.R. 606(B), which embodies the "*aliunde* rule," governs the competency of a juror to testify at subsequent proceedings concerning the original verdict. *Hessler* at 123. The rule provides,

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's

mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, *only after some outside evidence of that act or event has been presented.* However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. *A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.*

(Emphasis added.) Evid.R. 606(B).

 [*P71]  In *State v. Schiebel,* 55 Ohio St.3d 71, 75, 564 N.E.2d 54 (1990), the Supreme Court explained that "[i]n order to permit juror testimony to impeach the verdict [pursuant to Evid.R. 606(B)], a foundation of extraneous, independent evidence [i.e. evidence *aliunde*] must first be established." The Court noted that "[t]his foundation must consist of information from sources other than the jurors themselves and the information must be from a source which possesses firsthand knowledge of the improper conduct." (Citation omitted.) *Id.* Therefore, a juror's affidavit alleging misconduct of another juror may not be considered without evidence *aliunde* being introduced first. *Id.* Additionally, "where an attorney is told by a juror about another juror's possible misconduct, the attorney's testimony is incompetent and may not be received for the purposes of impeaching the verdict or for laying a foundation of evidence *aliunde.*" *Id. See Brakeall* at ¶ 19-20 (reasoning that defense counsel's affidavit of juror misconduct not proper Evid.R. 606(B) evidence when information ultimately came from juror).

 [*P72]  "The purpose of the *aliunde* rule is to maintain the sanctity of the jury room and the deliberations therein. The rule is designed to ensure the finality of jury verdicts and to protect jurors from being harassed by defeated parties." *Hessler* at 123. Therefore, when there is no evidence of juror misconduct that is offered from sources other than jurors themselves, a trial court does not abuse its discretion in failing to hold an evidentiary hearing or granting a new trial. *Brakeall* at ¶ 19-20; *Hessler* at 123.

 [*P73]  In the present case, appellant attached two affidavits to his

motion for a new trial. One of the affidavits was from Juror No. 9 who served as part of the jury during appellant's trial. Juror No. 9 averred that she was told by Juror No. 10 that his daughter informed him that the surveillance video of the fight was on YouTube. Juror No. 9 did not state whether Juror No. 10 saw this video. The second affidavit was from appellant's counsel who averred that he was made aware that Juror No. 9 alleged that another member of the jury had watched a YouTube video of the fight. In his affidavit, he explained that the bailiff heard from Juror No. 9 that a member of the jury might have watched a YouTube video of the fight. Additionally, attached to appellant's counsel affidavit was a printout from the YouTube website of two scenes of the fight. The printouts show that on May 1, 2012, the second day of trial, someone "googled" appellant's name and was directed to the video. On May 1, 2012, the first video was viewed 15 times while the second video was viewed five times.

[*P74] We find that the trial court did not abuse its discretion in denying appellant's motion for a new trial and refusing to grant an evidentiary hearing as appellant failed to present evidence of the alleged juror misconduct. Appellant presented three pieces of evidence to support his motion for a new trial. One of the pieces of evidence, the YouTube printouts, did constitute outside evidence. However, the printouts merely show that the two fight scenes were viewed on the second day of trial; the printouts do not contain any information to connect these viewings to any member of the jury. Therefore, these printouts did not constitute sufficient evidence to demonstrate juror misconduct.

[*P75] Additionally, the other two remaining pieces of evidence did not demonstrate juror misconduct as appellant did not lay the requisite foundation for the introduction of any testimony from a member of the jury regarding alleged juror misconduct. The affidavits from Juror No. 9 and appellant's counsel were not based on outside evidence. Instead, both affidavits contained information that ultimately came from a juror. Therefore, these affidavits were not evidence *aliunde* of the alleged juror misconduct. Additionally, as the YouTube printout did not demonstrate evidence of juror misconduct, it could not constitute evidence *aliunde* necessary to introduce the affidavits.

[*P76] Lastly, we note that even if the affidavits were admissible, appellant has not demonstrated that he suffered prejudice. The affidavit of Juror No. 9 merely stated that Juror No. 10 was aware that the video was posted on YouTube. Appellant presented no evidence that any juror watched this video. It is a "long standing"

26

rule that a judgment will not be reversed based upon juror misconduct unless prejudice to the complaining party is shown; prejudice will not be presumed. *State v. Doan,* 12th Dist. No. CA2001-09-030, 2002 Ohio 3351, ¶ 45, citing *State v. Keith,* 79 Ohio St.3d 514, 526, 1997 Ohio 367, 684 N.E.2d 47 (1997).

[*P77]  Thus, the trial court did not err when it denied appellant's motion for a new trial on the ground of juror misconduct, since appellant did not produce evidence of the alleged misconduct. Also, the trial court did not abuse its discretion under the circumstances of this case by denying appellant's motion without holding an evidentiary hearing.

[*P78]  Appellant's eighth assignment of error is overruled.

*State v. Gatliff, supra.*

While the Twelfth District cites state precedent rather than federal, the due process issue is the same.  Gatliff cites no Supreme Court precedent holding that the application of the *aliunde* rule in these circumstances is unconstitutional and indeed the Supreme Court has just last term unanimously upheld application of Fed R. Evid. 606(b) to prohibit use of a juror's testimony that another juror lied during voir dire.  *Warger v. Shauers*, ___ U.S. ___, 190 L. Ed. 2d 422 (2014). The Twelfth District's decision is not an objectively unreasonable application of Supreme Court precedent and the Eighth Ground for Relief should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.


December 10, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).